Pankaj Raval, California State Bar No. 273973
CARBON LAW GROUP, P.C.
13925 City Center Drive, Suite 200
Chino Hills, CA 91709
Telephone Number: (323) 543-4453

Attorneys for Plaintiff
SOCIAL HOUSE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Social House, Inc., a California corporation;<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Marlene Arce dba Social Art House, an individual residing in California;<br><br>　　　　　Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) UNFAIR COMPETITION/FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**<br>**(2) COMMON-LAW SERVICE MARK INFRINGEMENT;**<br>**(3) UNFAIR COMPETITION UNDER CAL. BUS. & PROFS. CODE §§ 17200 et seq.**<br>**(4) COMMON-LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

　　　Plaintiff SOCIAL HOUSE, INC. ("Plaintiff"), through its undersigned counsel, brings this action against Defendant MARLENE ARCE dba SOCIAL ART HOUSE ("Defendant"). Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for trademark and unfair competition violations based on Defendant's use of the term SOCIAL ART HOUSE in connection with services that overlap with the services Plaintiff has long provided under the registered trademark SOCIAL HOUSE (Reg. No. 4591018).

2. Plaintiff herein asserts claims for false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); violation of California Business & Professions Code section; and for substantial and related claims of trademark infringement and unfair competition under California law. These claims arise from the Defendant's unauthorized use of SOCIAL ART HOUSE in connection with marketing, advertising, and branding strategy services not unlike Plaintiff's.

3. Plaintiff brings this lawsuit to protect the substantial goodwill that it has developed over years of use of its distinctive mark SOCIAL HOUSE to identify itself as the source of high-quality social media marketing, advertising, and strategy services.

4. The goodwill and reputation for quality that Plaintiff has worked so hard to cultivate is being threatened by Defendant's actions. Defendant has used and continues to use the term SOCIAL ART HOUSE, which is confusingly similar to Plaintiff's registered trademark, to provide overlapping services within the field of marketing, advertising, and social media strategy. Unless Defendant is enjoined from such use, said use will continue to cause consumer confusion and will cause irreparable harm to Plaintiff.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. sections 1331, 1338(a), 1338(b), and 1367(a) and under 15 U.S.C. sections 1117, 1125(a), and 1125(c), because this action involves substantial claims arising under the Lanham Act.

6. This Court has supplemental jurisdiction over Plaintiff's common-law claims under 28 U.S.C. section 1367(a).

7. This Court has personal jurisdiction over Defendant because Defendant is an individual domiciled in Los Angeles County, California.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

9. Plaintiff Social House, Inc. is a California corporation with its principal place of business in Los Angeles County, California.

10. Defendant Marlene Arca dba Social Art House is an individual domiciled in Los Angeles County, California.

## PLAINTIFF AND ITS MARK

11. Plaintiff is well known as a provider for marketing, advertising, and social media strategy services to businesses nationally and globally across a wide variety of industries, predominately beauty, fashion, lifestyle, and technology.

12. Plaintiff has provided these services in interstate commerce under the name SOCIAL HOUSE ("Plaintiff's Mark") since at least as early as May 9, 2011.

13. On August 26, 2014, Plaintiff obtained a federal trademark registration for SOCIAL HOUSE in connection with: marketing, advertising, and marketing and strategy consulting in the field of social media services (Reg. No. 4591018).

14. Plaintiff's registered trademark, Reg. No. 4591018, is now incontestable.

15. Through business success and media exposure, Plaintiff has built a strong reputation for helping businesses utilize effective marketing, advertising, and social media campaigns for better business outcomes.

16. Over the years, Plaintiff has received a number of awards for its achievements in the brand strategy and social media consulting field, including a Vega Digital Award in 2023. The Vega Digital Awards is an awards program recognizing exemplary digital product creators nationally and internationally.

17. Over the years, Plaintiff and its founders have been featured in print media, podcasts, and on television. The company has been featured as a leader in the business branding industry in publications such as Voyager LA Magazine and GritDaily. Plaintiff has also been highlighted on a number of podcasts, including Where There's a Will and Women in Motion. In 2019, Plaintiff's CEO was interviewed on NASDAQ's Trade Talks, a live television show, regarding social media ad strategy.

18. Recently, in 2025, Plaintiff was recognized by Women We Admire, an organization recognizing successful female-led businesses across the nation. Social House's CFO as named as among Women We Admire's top female business leaders in 2025.

19. From industry recognition, widespread media visibility, and nearly 15 years of use in commerce, Plaintiff's Mark is widely recognized by the consuming public of the United States as a designation of source for Plaintiff's services.

**DEFENDANT'S UNLAWFUL ACTIVITIES**

20. In recent years, Defendant began operating a marketing service "offering an expansive consulting experience for brands through ingenuity, originality and imagination," according to Defendant's website.

21. Defendant's business operates under the name SOCIAL ART HOUSE ("the Infringing Mark").

22. Like Plaintiff, Defendant helps businesses with their social media development, website development, content creation, and other marketing strategies.

23. Defendant's services are targeted primarily to beauty businesses, which are an important subset of Plaintiff's clientele.

24. Upon learning of Defendant's use of the Infringing Mark, Plaintiff contacted Defendant through counsel. Plaintiff stated that Defendant's use of SOCIAL ART HOUSE violated Plaintiff's trademark rights in SOCIAL HOUSE within the branding and social media marketing consulting space. Plaintiff made no request for money and simply asked Defendant to stop using the Infringing Mark.

25. In spite of said notice, Defendant has continued to use the term SOCIAL ART HOUSE to promote branding and social media marketing consulting services that are competitive to Plaintiff's services.

26. Plaintiff is aware of at least one example of actual confusion resulting from the co-existence of SOCIAL HOUSE (Plaintiff) and SOCIAL ART HOUSE (Defendant) within the same field and targeting the same clientele.

27. In late 2024, Plaintiff was in talks with Bellami, a hair company that expressed interest in using Plaintiff's services. In an email sent December 30, 2024, the Bellami representative referred to a prior meeting with Social House that had supposedly occurred a few months earlier (See **Exhibit 1**). The Bellami representative attached to the email a copy of the brochure (called a "deck") that Social House had supposedly provided at said meeting. There was no prior meeting, and Social House had never provided a brochure. The brochure is Defendant's marketing deck (See **Exhibit 2**).

28. The email clearly shows consumer confusion, for Bellami must have previously interacted with Defendant and then falsely assumed that Defendant was actually Plaintiff.

29. Plaintiff has asked Defendant more than once to switch to a different name that is not confusingly similar to Plaintiff's Mark. Defendant has ignored these requests and continues to engage in commerce under the Infringing Mark.

## COUNT ONE
## Federal Unfair Competition – 15 U.S.C. sec. 1125(a)

30. Plaintiff restates and realleges paragraphs 1 through 32 above, as if fully set forth herein.

31. Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of the parties' respective services.

32. Plaintiff's mark and the Infringing Mark carry the same commercial impression due to similarity of sight, sound, and meaning.

33. Plaintiff and Defendant promote their respective services under their respective marks through overlapping trade channels.

34. Defendant's services that are marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark are highly similar to Plaintiff's services, serve the same purpose of elevating brands, and are targeted to the same types of clientele—as exemplified by Bellami Hair, who was in talks with both companies to obtain similar types of services.

35. There are known instances of actual confusion between Plaintiff and Defendant as the result of the confusing similarity between Plaintiff's Mark and the Infringing Mark.

36. Defendant continues to use the Infringing Mark despite receiving written notice more than once of Plaintiff's contentions of infringement. The similarity of the marks and the proximity of the parties' services are non-arguable and should be readily apparent to Defendant. Defendant disregard of the infringing nature of its conduct and its continued use of the Infringing Mark is willful under the Lanham Act.

37. It would not cause harm or prejudice to Defendant for Defendant to transition to a different name that is not confusingly similar to SOCIAL HOUSE.

38. Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the parties' respective services.

39. Defendant's infringing acts have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's services originate from, are associated, or affiliated with, or otherwise authorized by Plaintiff.

40. Defendant's infringing acts have and are likely to deceive the relevant consuming public into believing, mistakenly, that Plaintiff's services originate from, are associated, or affiliated with, or otherwise authorized by Defendant.

41. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public. Unless enjoined by this court, Plaintiff has no adequate remedy at law.

42. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

43. Plaintiff is further entitled to enhanced damages and profits due to Defendant's willful infringement.

## COUNT TWO
### Common-Law Service Mark Infringement

44. Plaintiff restates and realleges paragraphs 1 through 42 above, as if fully set forth herein.

45. Plaintiff's Mark is distinctive and protectable at common law due to nearly 15 years of use and wide recognition in the industry.

46. Plaintiff's Mark is a word-only mark that is non-functional.

47. Defendant was and is using the Infringing Mark in connection with advertising and offering its own marketing and social media consulting services that are highly similar to and competitive to Plaintiff's services.

48. SOCIAL HOUSE (Plaintiff's Mark) and SOCIAL ART HOUSE (the Infringing Mark) are confusingly similar in sight, sound, and meaning. "Art" in the Infringing Mark is merely descriptive of the artistic aspect of Defendant's services, such that the addition of this word does not differentiate the Infringing Mark from Plaintiff's Mark in the eyes of consumers.

49. Plaintiff and Defendant promote their respective services under their respective marks through overlapping trade channels.

50. Defendant's services that are marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark are highly similar to Plaintiff's services, serve the same purpose of elevating brands, and are targeted to the same types of clientele—as exemplified by Bellami Hair, who was in talks with both companies to obtain similar types of services.

51. There are known instances of actual confusion between Plaintiff and Defendant due to the confusing similarity between Plaintiff's Mark and the Infringing Mark.

52. Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the parties' respective services.

53. Unless enjoined, Defendant's ongoing infringement will impair the distinctiveness of the Plaintiff's Mark and cause injury to Plaintiff's reputation that cannot be remedied through damages, so Plaintiff has no adequate remedy at law. Plaintiff is entitled to preliminary and permanent injunctions restraining and enjoining Defendant and its agents, employees, and all persons acting thereunder, in concert with,

or on their behalf, from using in commerce the Infringing Mark or any colorable imitation of Plaintiff's Mark.

## COUNT THREE
## Unfair Competition under Cal. Bus. & Profs. Code §§ 17200, et seq.

54. Plaintiff restates and realleges paragraphs 1 through 52 above, as if fully set forth herein.

55. Defendant has adopted an unauthorized business practice of knowingly conducting business as Social Art House in order to compete with Plaintiff in the marketing consulting space by causing confusion or mistake, deceiving the public as to the origin, sponsorship, association, or approval of the parties' respective services, and falsely implying an association with Plaintiff. This unauthorized business practice is unlawful, unfair, unscrupulous, and substantially injurious to Plaintiff and the public.

56. By using Plaintiff's Mark for their own competing branding and social media marketing business, Defendant has intentionally caused the public to be deceived, confused, and/or mistaken as to the ownership of Plaintiff's business, thereby harming Plaintiff's business and hard-earned goodwill in the marketplace.

57. Defendant's business practices alleged herein constitute unfair competition and unfair and unlawful business practices in violation of California Business & Professions Code section 17200 et seq.

58. Without injunctive relief Plaintiff has no means by which to control Defendant's deceptive and confusing use of the Infringing Mark.

59. As a direct and proximate result of Defendant's unfair competition and unlawful and deceptive business practices alleged herein, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury to its business reputation and goodwill for which no adequate remedy at law exists.

60. Plaintiff is entitled to injunctive relief prohibiting Defendant from continuing to use the Infringing Mark or any protectable similar name, including but not limited to, domain name, promotional materials, letterheads, business cards, signage, and advertising, including social media advertising, and prohibiting Defendant from such acts of unfair competition and unlawful and deceptive business practices alleged herein, and appropriate restitution remedies, per California Business & Professions Code sec. 17203.

### COUNT FOUR
### Unfair Competition under California Common Law

61. Plaintiff restates and realleges paragraphs 1 through 59 above, as if fully set forth herein.

62. Defendant purposefully deceives customers into inferring an association between Defendant and Plaintiff, as exemplified by Bellami Hair's mistaken belief that the companies are one and the same.

63. Defendant's actions are designed to deliberately cause confusion or mistake, or to deceive the public as to the origin, sponsorship, association, or approval of the parties' services such that Defendant, a newcomer in the market, may wrongfully benefit from the goodwill that Plaintiff has developed in Plaintiff's Mark over nearly 15 years of providing quality services in the branding, marketing, and social media consulting field.

64. Defendant's willful wrongful conduct alleged herein constitutes unfair competition under California common law.

65. Defendant's conduct is willful and in conscious disregard for Plaintiff's rights in Plaintiff's Mark.

66. As a direct and proximate result of Defendant's wrongful conduct alleged herein, Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury to his business reputation and goodwill for which no adequate remedy at law exists.

67. Defendant's wrongful conduct of causing consumer confusion and deception by falsely implying an association with Plaintiff, as alleged herein, is willful, wanton, malicious, oppressive, and fraudulent and done in conscious disregard to the rights of Plaintiff, who is therefore entitled to recover punitive damages under California Civil Code section 3294 according to proof.

## PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiff respectfully requests that the Court enter judgement in its favor and against Defendant as follows:

(a) Enter judgment that Plaintiff's Mark SOCIAL HOUSE, federally registered as Registration Number 4591018, is valid and enforceable.

(b) Enter judgment that Defendant's unauthorized use of the confusingly similar term SOCIAL ART HOUSE in connection with branding, marketing, and social media consulting services constitutes federal unfair competition in violation of 15 U.S.C. section 1125(a).

(c) Enter judgment that Defendant's unauthorized use of SOCIAL HOUSE in connection with branding, marketing, and social media consulting services constitutes service mark infringement under California common law;

(d) Permanently enjoin and restrain Defendant, along with its agents, employees, officers, attorneys, successors, assigns, affiliates, and any persons in privity or active concert or participation with any of them, from using the term SOCIAL ART HOUSE—alone or in combination with other words or symbols—as a service mark, trade name component, or otherwise, to market, advertise, distribute, or identify Defendant's products or services;

(e) Enter an order requiring Defendant to immediately discontinue using the domain name www.socialarthouse.com;

(f) Pursuant to 15 U.S.C. section 1116(a), direct Defendant to file with the Court and serve on Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant complied with the injunction;

(g) Pursuant to 15 U.S.C. section 1118, require Defendant and all others acting under Defendant's authority, at their cost, to deliver and destroy all devices, literature, advertising, labels, and other material in their possession bearing the Infringing Mark;

(h) Award Plaintiff all damages sustained as the result of Defendant's acts of Infringement and unfair competition, said amount to be trebled, together with prejudgment interest, pursuant to 15 U.S.C. section 1117;

(i) Award treble actual damages and profits pursuant to 15 U.S.C. section 1117(b) because Defendant's conduct is willful within the meaning of the Lanham Act;

(j) Award Plaintiff its attorneys' fees and costs pursuant to 15 U.S.C. section 1117, or as otherwise allowed by law;

(k) Award Plaintiff punitive damages; and

(l) Grant Plaintiff additional, other or further relief as the Court deems proper.

Dated  May 1, 2025
    Los Angeles, California

Respectfully submitted,

_____

Pankaj Raval

Carbon Law Group, APLC

*Attorneys for Social House, Inc.*

13925 City Center Drive, Suite 200,

Chino Hills, CA 91709

O: (323) 543-4453

p@carbonlg.com